Good morning. Our first case is number 23-2125 United States against Dorsey. Mr. Ullman. Thank you, Your Honor. Jason Ullman on behalf of Mr. Tejinder Dorsey. With the court's permission, I'd like to reserve three minutes for a rebuttal. Granted. Thank you. We're all familiar with Range v. Attorney General. The government took Range v. Attorney General up to the Supreme Court. And their papers in the Supreme Court have accused this court of creating an unworkable standard, an indiscernible test in Range v. Attorney General. I don't think that's true. I think that Range does create a workable discernible standard. And I think that in Mr. Dorsey's case, this is a case to identify under plain error that Range creates a workable discernible standard that results in Mr. Dorsey's favor on plain error in this case. So let's walk through the Bruin test in Range, and I'll tell you why I get to that conclusion. So we know for Bruin, part one of the test, Mr. Dorsey is within the people. This court you correctly analyzed in your concurrence in Bindera, a 922G1 offense, entirely eviscerates the right to carry arms. So therefore, that implicates the Second Amendment. Once we've met the part, I'm sorry, part one of the Bruin test, we move on to prior part two. And what this court addressed in Range, it was a detailed discussion of the historical analogs that the government presented, tried to be extremely, in my April 12th 20J letter, I carefully picked apart every analog that the government says it presented in this case, and point out you all have rejected those same analogs in Range itself. And also that you all have already rejected those analogs. So I think we're not breaking new ground here. Mr. Dorsey. As you know, Range was an as applied challenge, correct? Yes, Your Honor. And in order to prevail here, you have to show that Dorsey is similarly situated or like Range, correct? Oh, well, as far as application of the test, yes, Your Honor, that the historical analogs in part two are not appropriate for 922G against a person with one nonviolent felony conviction. And isn't it true that there are a lot of differences between Dorsey and Range? Well, I start with the commonalities, which is one nonviolent felony conviction, Your Honor. And you have already crossed this bridge in Bindrup, Mr. Julio Suarez. Well, my opinion in Bindrup doesn't matter. That was a concurrence. No, I understand that. But the majority also agreed that Mr. Suarez's prior nonviolent felony conviction or felony equivalent for carrying a firearm without a license, that that did not dispossess him of the Second Amendment. All right, but so Bindrup and Suarez prevailed and Range prevailed, but I was asking you to focus on Range. How is Dorsey like Range? You identified one way in which he's like Range. You said he had a prior nonviolent conviction. Are there other ways he's like Range? Yes, Your Honor. So the historical analogs that they present. Well, historical analogs are the statutes. I'm asking you about the facts. Right. I'm trying to get to the bottom of how is Dorsey like Range and how is he dissimilar from Range? I have a lot of points to make about why he's dissimilar from Range, but I'm trying to give you an opportunity to tell us other reasons why he's like Range. So I think he's like Range in the fact that he's just got the one nonviolent felony conviction. But it's not the same predicate offense, right? It's just it's a different offense. It's not food stamp fraud. That's correct, Your Honor. But the reason that I think Judge Phipps sets a distinction without a difference is because of the way that this case fell out in Bindrup for Mr. Suarez with the prior concealed, I'm sorry, with the carrying without a license conviction not being a disqualifying predicate for Mr. Bindrup. But at the minimum, we're here on plain error review, right? That's just be totally obvious. So you have a different offense. You have to accept that we care about recency. I don't know if you think we should care about the recency of the prior offense, but recency is different here, more recent in this case, and we have different criminal histories. And so while we're looking at this and we're saying, you know, you come asking us to say that it's plain and we have these differences, maybe these differences in the end don't matter. But I think doesn't some level of analysis have to occur before just saying, no, it's just so obvious that we can just skip all of them? Well, I think that whatever level of analysis, though, is already dictated by this court's precedents. And that's why I say it's plain, clear, obvious. And when you talk about recency, we know from Bindrup, the majority opinion in Bindrup, it says that rehabilitation is not a factor in this. So I realized Bindrup was abrogated by Bruin, but in that analysis in Bindrup, recency of the conviction or rehabilitation efforts, those were not factors. Those were factors that were rejected by the majority opinion in Bindrup. So I think that those are not factors that should be applied here when you're trying to analyze. Bindrup wasn't doing a full historical analog analysis. That's what we're doing now. I would have, I would appreciate to move into Bruin part two, honestly, when you're talking about historical analysis part. I appreciate this question to be more, is this a question about Bruin part one, whether Mr. Dorsey falls into Bruin part one? Because I think that he clearly does in his conduct, clearly does the possession of a firearm. I think that that's what like range is, means is that possession of a firearm is the predicate disqualifying he's within the people. When we're going through plain error review, we're often going through more than just one case or even two cases. Are there any other cases to which we can look for purposes trying to determine whether the bonus and obvious requirement has been met other than the two, other than Bruin and Rangers that you've just referred to, and you referred to Bindrup, but I think it's been well suggested that it doesn't really help here. Is there any other, sorry, there's this plain and obvious. Yeah, yes, Your Honor. Under Bruin part two, the historical analysis test, you all rejected the exact same historical tradition. The analogs the government presents in this case, they've already been addressed in range and in Bruin. The additional, I think, thing that I would point the court to is the thorough historical analysis in Justice Barrett's, Judge Barrett's dissent in Cantor. That was a very thorough historical analysis. I think it points up or adds credibility, not credibility. It reinforces the correctness of this court's decision in range. How does range for our clear error purposes dictate a clear or indisputable answer? How does range do that? Yeah. So one nonviolent felony conviction, the government must point to historical analogs that would discuss someone with that, and the historical analogs they have pointed to were rejected in range. And I'm happy to discuss anything that the court would disagree with. It just sounds like you're That because the government could not come up with historical analogs to dispossess range, it therefore follows that every other person who is convicted of a nonviolent felony or misdemeanor equivalent to a felony for punishment purposes would also not be able to be dispossessed. You seem to be making an argument that will apply to all nonviolent felons. That's an across the board analysis, not something peculiar to the facts of your client's case. Well, the first two responses, Your Honor, the first is that, of course, for an as implied or for a facial challenge, I have to disprove that the statute is constitutional in every possible application, which you haven't and you haven't made that argument in your brief. Correct. You seem to be making it now. That's what I'm. Oh, no, Your Honor. But I think 922 G1 applies to violent felons as well as nonviolent felons. That's why I didn't make this as a well. But all right. But are you are you saying that that all 922 G1 is unconstitutional as applied to all nonviolent felons? You know, that's that is the principle that is the articulation in range. That's true. Well, I and I'm confident I remember what range says. Range says, first of all, it's an error decision. Second of all, it's as applied. And thirdly, it goes into great detail about Mr. Range and his circumstances and the fact that that his crime was a long time ago. It was nonviolent. It was a minor fraud conviction. You've got a client who was on parole, correct? Yeah, the client was a lot more recent. It was a gang investigation, correct? That's what the police were were investigating. That's correct. Mr. Range brought a civil case, the declaratory judgment. This is a criminal case, correct? That's correct. So these are these are all differences. And I guess the argument is that they're immaterial differences, is that you're under the historical analogs? Yes, Your Honor. I believe that they're immaterial differences. All right. But to Judge Smith, let's assume you're correct. Let's assume they are immaterial differences. We're on plain error review. What case or cases tell us that it's those differences? So I think the articulation of the test in Range, which I understand your point, Your Honor, that that's that that's my point, is that the articulation of the test in Range makes this error plain here and that the analog presented are not sufficiently justified by the how and the why under Bruin Part Two. So but I mean, really under plain error review, kind of I understand the exercise. If the district court, when conducting this sentence, and were to have the benefit of all of the precedent that we have right now today, would say, I don't care that there's no objection. I just have to stop everything. We got a huge problem here. And it is outside of what this prosecution can be. That's asking a lot, I think. And so sometimes there is enough precedent that we say, yes, district courts in that hypothetical should do that. Here, it seems to be that you're saying that the Range, which is Judge Hardiman articulated, articulates many factors would be enough for a district court to say, let's stop, this is error. I think that's correct, Your Honor. Yes. Plain and obvious error. Yes. Such that even without objection, the district judge would have to say to the prosecutor, I know what you're doing here. This is not a crime that is applied to this individual. They'd have to stop the proceedings and say this, everything must go out based on Range. It's so unequivocal. The government could stand up and probably have to say, that's right. I got nothing to come back at you with because it's so plain. Your Honor, respectfully, I do think that that's the case. Yes, one nonviolent felony conviction. Correct. The government has to work through the historical analogs to justify why that would be a disqualifying predicate for Mr. Dorsey and the analogs they've worked through have already been rejected under Range. Do they have to work through those analogs if there's been no objection from the defense counsel? Because it seems that now we're reading into some sort of burden of production on the government to say, we want to bring a 922 charge. Along with that, well, here's our historical analog evidence. It's almost preempt an objection to avoid an error. Yes, Your Honor, that's right. Because under Bruin Part 1, I mean, we know that this defendant is within the people and Bruin Part, I'm sorry, under Bruin Part 1, we know the defendants within the people. We know that the 922 G1 conviction eviscerates the Second Amendment, right? Because carried so that the burden shifts to the government to justify with historical analogs, it's prosecution of this person based on the predicates. That's exactly right. I see that my time is up, but I'm happy to answer more questions or sit down. All right, we'll hear you on the bottle. Thank you, Mr. Romano. Mr. Glasser. May it please the Court, William Glasser, Chief Justice Bates. Range said his decision was, a narrow one that found Section 922 G1 unconstitutional only as applied to Brian Range, a civil plaintiff with a 25-year-old conviction for food stamp fraud. Range does not make it clear or obvious that Section 922 G1 is unconstitutional as applied to Dorsey, given his recent weapons offense, his parole status, and his knowing decision to violate the law. So the easiest way to resolve this case is not to try and determine even necessarily whether there was error here. We certainly don't think there was error under Range, but I think the easiest way to resolve this is to conclude that there is no clear or obvious error, at the very least. Because it's untrodden ground? Exactly, Your Honor. And because something's a debatable proposition, it necessarily follows that it can't be plain error. That's correct, Your Honor. So this Court hasn't required a decision that's on all fours or exactly analogous. But what this Court has, in order for something to be plain error, but it does have to be something that's clear or obvious, as Judge Phipps was suggesting, as something that the District Court, had it realized what was going on, would have concluded that this is just unconstitutional as applied to Range. In this case, the sentencing happened the day after this Court's undaunted decision in Range, and the parties have been mentioned, Range, and the District Court didn't say, we need to stop everything. We have a clear or obvious constitutional error. And I just don't think that there's any possible way to reach that conclusion based on Range, because Range emphasized it was a narrow decision. This is just a mechanical slash procedural question, but in this particular case, just how and when should counsel have raised the issue? So, Your Honor, I think that the appropriate time to raise the Second Amendment challenge would have been based on Bruin, as people were doing all over the country, and a pretrial motion to dismiss. All right, so well prior to Range. That's correct, Your Honor. But even, let's assume that, you know, there was, it was not until the en banc decision in Range that there was a, that there was really sort of a problem here. I think it still would have been, albeit late, it would have still been appropriate for defense counsel to raise that issue at sentencing and request a withdrawal of the plea. Why would it have been late at sentencing? Well, Your Honor. That's what happened. Sure, so under, and I don't have the rule in front of me, but under Rule 11, if you, in order to withdraw a guilty plea, you have to show some sort of reason for the timing of your motion to withdraw the guilty plea. Some sort of good cause for it. You know, the argument then would have been, well, Range provided good cause for the motion to withdraw the guilty plea at sentencing. And your friend across the aisle, of course, was not counsel at the time that the plea was entered. That's correct, Your Honor. But whatever the case, there just was never at any point an objection raised, and that's why we're here on Plain Error Review. I don't think there's any dispute that plain error is the appropriate standard. Am I correct? I went back and only quickly looked at this, but Range actually came down and was filed the day before Mr. Dorsey was sentenced. That's correct, Your Honor. Yes. So if I can just briefly run over some of the differences between Brian Range and Mr. Dorsey, because I think whether the court looks solely at the prior convictions, whether the court, or whether the court looks at the circumstances of the offense, there are many reasons why Range doesn't make it clear or obvious that the statute was unconstitutional at the plight of Mr. Dorsey. So first of all, the underlying convictions here are different. So food stamp fraud, although it at the time was punished in Pennsylvania by up to five years, is a less significant offense than the weapons offense, the unlicensed carrying of a firearm offense under section 61, excuse me, 6106. Is it enough to say that that's a difference, or analytically, should we characterize on the degree of difference between that offense and what is before us here? Well, Your Honor, I think the degree would matter. So let's say that were essentially two offenses of equal seriousness, equal punishment, then it would be a much stronger case for the defense to show error and maybe even plain error. But the statutory maximums are different. So the offense that was at issue here, 6106, had a seven-year statutory maximum rather than a five-year statutory maximum. If you look at the actual sentence received, Mr. Range received a sentence of probation, whereas Mr. Dorsey received a sentence of six to 23 and a half months when you count sort of all the time that he was in prison, it appears he was in prison for about eight months. So this court has never even, before Range, struck down 922 G1 in the context of someone who received any prison sentence as opposed to mere probation. When you look at the... I struggle with that argument, though, because it sounds like you're suggesting that one's don't have them will be influenced by how much time a judge gives you in a criminal case. Is that your argument? Well, Your Honor, that's certainly not our preferred position, but we're here because we're stuck with Range, at least for the moment. It does seem that Range found irrelevant that Range was sentenced only to probation. So the government's view is that, no, the statutory maximum is enough. The government would put that at one year. This court obviously disagrees, but whatever the case, it does seem significant that it seems significant in light of Range. Where in the Range opinion was their emphasis placed on the actual sentence Range received? Your Honor, it was... Wasn't that just a basic reference to the skeletal facts of the case? It was, Your Honor. I think that's unfortunately all that the Range decision gives us is essentially the facts of the case. And the court says that it applies to people, someone like Range. So what factors are considered relevant for determining that the 922-G1 was unconstitutional as applied to that plaintiff? So we're simply pointing to some of those facts. Again, we think that the best and most straightforward way to approach it is to focus solely on the statutory maximum, but to the extent that Range found the sentence received relevant, there's a difference here. Well, how does... Same question I asked before then with respect to the statutory maximum. Your argument is that whether one possesses the right to keep and bear arms depends upon what their statutory maximum is in a case? Absolutely, Your Honor. That is our position. And okay, so go through us for us... What's the threshold? What's the statutory maximum when one has a second right to keep and bear arms and where one loses it? Well, Your Honor, I don't think that's clear in this after Range. The government's view is that it's one year. So it's not an unusual proposition to say that the statutory maximum is constitutionally relevant. It's relevant. All right, but then now you've just said that the legislature can always define the scope of the right. No, Your Honor. I don't think it's true that the legislature can always define the scope of the right. So as the government has explained to the Supreme Court, for example, in the Rahimi case, there can be instances in which there is judicial review as to whether or not the classifications or categories that the legislature disarms are appropriate. But I do think there is a high degree of legislative difference. And again, this is not at all inconsistent with how the Supreme Court has interpreted the grand jury clause in the Fifth Amendment, the definition of petty offenses for purposes of a jury trial. And the Supreme Court said in the 1996 Lewis. So I'm not nearly as familiar with those clauses as I am with the Second Amendment. But has the Supreme Court said that legislatures have free reign to define petty offenses however they want? No, Your Honor. What the Supreme Court has said is that for purposes of a jury trial right, a petty offense is pegged at something the statutory maximum for which is below six months. And I think the reason that we don't see there's some is there some historical support for that, or is that just something the legislature came up with as a policy matter? Something the legislature came up with, Your Honor. I mean, the Supreme Court did conduct an inquiry into history, certainly not as extensive as it does in the Second Amendment context when when concluding that the statutory maximum was relevant. And, and the Supreme Court said in Lewis, the 1996 case, not the 1980 case, we cite in our 28 J letter, but the one we cite in our brief, the court said in Lewis that, quote, the maximum authorized penalty provides an objective indication of the seriousness with which society regards the offense. So I understand that you might have concerns about, you know, the legislature sort of creating a felony for anything that just sounds like a runaway train. If the scope of the Second Amendment right can be circumscribed by the legislature considering an offense, quote, serious, then why couldn't the legislature circumscribe the First Amendment right to speak or to worship or anything else at the definitional level? Your Honor, I think that there's a different history behind the First Amendment than behind the Second Amendment. And so it wouldn't be, it wouldn't be appropriate for the legislature to sort of categorize something as sufficiently serious that you could be deprived of your First Amendment rights. But it actually sounds like a direct assault on the Supreme Court's statement that the Second Amendment is not a second class right. Your Honor, it is not, it's certainly not a second class right. But the Supreme Court has said that it was a longstanding right inherited from our English ancestors. And it brought with it the soil of that understanding when it was incorporated into the Constitution. And so the Supreme Court has repeatedly said, there are certain categories, the Supreme Court has indicated felons, the mentally disabled, for example, the Supreme Court has said the dangerous, irresponsible person, excuse me, non-law abiding and irresponsible persons can be disarmed. So that's something that historically was brought into the Second Amendment. But I again, I don't think the court... You know, this discussion of history leads me to kind of inquire into one of, I think, of the big differences between Dorsey's case and range cases, which is that Dorsey was on parole at the time. Historically, what do we know about parole? You say, you know, the soil that comes with it from our Anglo American roots and stuff like this. What do we know analogously about parole? Is this something that doesn't matter because it just didn't exist back then? Or should I make something of this? Are we looking to militia acts and stuff like this? What are we doing? Your Honor, I think the fact that he was on parole is significant. I think it also, that also relates to recency, which is another important distinction between this case and range. Your Honor, parole was not something that existed at the time of the founding. There might have been, you know, some sort of conditional release, but it's not something that I think that the important point is that parole is something that, as long as it's existed, has been considered part of the defendant's criminal sentence. And so someone who is on parole who commits any kind of violation in it, it doesn't have to be particularly serious, although obviously parole officers generally exercise their discretion. If you are intoxicated while on parole, you can be revoked and sent back to prison. You are still subject to that prison release. Are you saying it's the same as what you're arguing two days ago? Parole is, for all intents and purposes, the same as supervised release? Your Honor, I think for purposes of the constitutional analysis, yes, I would say the parole is perhaps even stronger because supervised release is sort of a, as conceived of by Congress, is sort of a transitional phase. And when you violate your supervised release, you're not sent back for the exact same prison, the remainder of your exact same prison term, but that's actually what happens in the parole context. You go back to continue serving the prison sentence that you got out of when you got out of prison early. Does that matter? Your Honor, in this case, I think, I don't think that, I mean, I think parole is relevant, but I think this court can easily conclude that there's no plain error based on a variety of things. So the fact that he was on parole, the fact that Dorsey committed his offense very recently, the fact that he committed a different offense than Mr. Range with a more serious statutory maximum, I think for any of the, any and all of those reasons, this court can conclude that there is no clear or obvious error under range. So, so you would have skipped to prong two and just, just resolve this on plainness grounds. Do you want us to get into prong one and actually find out if there's error? Your Honor, Your Honor, if the court wanted to say that there was no error, we would, we would obviously be, we're not looking for extra work. We would like to know exactly if you were writing the opinion, how we had to address this. I would go straight, we simply resolve the issue of the plain and obvious nature. I would resolve it on prong two. Yes, Your Honor. That's what this court did in, in the hall decision that we cited in our 28 J letter. And that certainly seems like the easiest way to resolve the case. I have no further questions. I'll give my time and ask Thank you, Mr. Glasser. Let's hear rebuttal from Mr. Allman. Thank you, Your Honor. Just a couple brief points. I hope. So I think I heard a government, the government say today that, that Mr. Dorsey would have been SOL even had he raised the objection, raised the motion to dismiss when range came out. I think that's what they said. It would be too late. It would be out of time. If I'm wrong about the standard overview, obviously this court can correct that. Another thing that I do want to briefly respond to is this. Well, on the timing issue, you knew there was a panel opinion range. The panel opinion was issued well before, right? Correct. I mean, it's, it's common for defense lawyers to make objections, even when they know the controlling laws is against them, because they want to preserve it in case the Supreme Court or the en banc serves reverses, correct? That is a litigation strategy. And all of that could have been done here. The binding precedent came out at a point in time that the government conceded would be, would be too late. That motion would be denied. If I, if I can move briefly to the historical, the differences. Right. It would have, just so we're clear though, it presumably would have been denied by the district court, but it would have been well preserved for review by this court. That's fair. You're on. That's right. How is it strategic not to have raised that you use the word that's that strategy isn't strategy certainly to have booked to the present posture and the fact that this case will eventually be decided and preserved. Isn't preservation strategy, non-preservation, not much of a strategy. I don't think I can really get, give the help any, give the courting guidance or clarity on, on that. Your Honor. I asked only because it was your choice of words. I was curious as to why you use that. I, I may say it's deficient performance. Is that what you're getting at? Your Honor. I don't think I can really speak to any of that, but what I want to point out is that the government appeared to concede that when range came down, when the ombud decision came down, it would have been an untimely objection to raise it at that point. If I can move into what the government discussed about why Mr. Dorsey is dissimilar. One of the things they did point out is parole and why I think that that's not a dissimilarity under the Bruin historical analysis is because when you read Judge Barrett's opinion in, in Cantor, when you read that dissent, you hear that the, the analogs that this court talked about on Tuesday, Mr. Moore's case, those analogs have a mixed history at best. When you read Judge Cantor's, I'm sorry, Justice Barrett's decision wasn't, parole does not, it's not. So are you saying that if we did all the same things we had, except for the fact that range was on parole at the time that you're totally confident that we would have reached the exact same result, the exact same vote count, the exact same, everything. Well, your, your Honor, I think that, um, that's fine. I would be playing. If you do, you know, that's fine. Right. The outcome, I think would have been the same because when you look at Justice Barrett's dissent in Cantor, I mean, pages four, 459 to 460, she goes through forfeiture. She goes through civil deaths. She says the history is mixed here. The history is mixed. And we know from Bruin footnote 11, that when the history is mixed, the government has not carried their burden to establish this as an appropriate justification to how and why are not a good fit when the history is mixed. So what you're saying is that the district judge should have said, well, not the range. It might not cover things, but what I need to do is I need to read a seventh circuit opinion by a now Supreme court justice. And when I do that, it's not binding on us. But when I do that now, now the light bulb goes on. And now I understand that there's, there's no, it's plain to say this, this indictment has to go. Well, where, where I would say where I agree with you, your honor, is that it's plain as day that he meets Bruin step, not step part one, Bruin part one, and then the burden shifts to the government to prove it's historical analogs and justify application of. Even when the defense doesn't raise the issue. I think, I think that that's correct. That goes to the timing issue that I think judge Smith, you appropriately got the government to concede that it would have been an untimely objection. I see myself. Thank you, Mr. Olman. Thank you, Mr. Glasser. We appreciate your arguments. The court will take the matter under advice. Thank you.